JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **ERIK SALAIZ,** | § |
| Plaintiff, | § |
| v. | §   EP22CV0045 |
| **ENCOR SOLAR, LLC** a Utah Limited Liability Company and **DANIEL LARKIN** | § |
| Defendants. | § |

FILED 2022 FEB -7 AM 9:40

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant ENCOR SOLAR, LLC ("Encor") is a Limited Liability Company organized and existing under the laws of Utah and can be served via registered agent Daniel Larkin at 3401 N Thanksgiving Way, Suite 150 Lehi, Utah 84043.

3. Defendant DANIEL LARKIN ("Larkin") is a natural person, resident of Utah, and Chief Executive Officer of Encor and can be served at 3401 N Thanksgiving Way, Suite 150 Lehi, Utah 84043 or 4422 N Country Wood Drive Lehi, Utah 84043.

4. Defendant Encor and Larkin (together "Defendants")

1

## NATURE OF ACTION

5. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

6. Defendants offer solar panel systems. As part of marketing their services, Defendant Encor and their agents placed illegal robocalls to Plaintiff's cell phone that used an automated telephone dialing system ("ATDS").

7. Defendant Encor make unsolicited and unauthorized phone calls to thousands of consumers en mass using an ATDS.

8. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

9. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant Encor's use of technological equipment to spam consumers on a grand scale without their consent.

10. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

11. Plaintiff therefore seeks an injunction requiring Defendant Encor to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

12. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case

arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

14. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

16. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

17. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

18. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

21. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

22. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

23. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

4

(2003).

24. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

25. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

26. The FCC confirmed this principle in 2013, when it explained that "a seller …may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

27. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

28. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

29. Plaintiff's personal cell phone (915) 252-9280 is on the National-Do-Not-Call-Registry.

30. Defendant Encor offers solar panel systems to consumers.

31. Defendant Larkin controls and dominates Encor.

32. Defendant Larkin approves of the contracts with the telemarketers who make illegal robocalls to thousands of consumers cellular and residential phone numbers using an ATDS.

33. Defendant Larkin authorizes the payments to the telemarketers.

34. Defendant Larkin pays the telemarketers out of bank accounts he owns and controls.

35. Defendant Larkin provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

36. Defendant Encor has been sued before for TCPA violations (case# 3:18-cv-02247-CAB-MDD) and Defendant Larkin continues to knowingly and willfully authorize

telemarketers to place illegal robocalls (like the calls alleged in this complaint) to thousands of consumers en mass by using an ATDS.

37. Defendant Larkin has full control over Encor and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially.

38. Plaintiff has never had any relationship with Defendants and never knew who Defendants were prior to this interaction.

39. The calls made to Plaintiff's personal cell phone (915) 252-9280 on behalf of Encor did not have Plaintiff's prior express written consent before calling.

40. Plaintiff received at least two illegal robocalls to his personal cell phone (915) 252-9280 from Defendants on the same day.

41. The unauthorized phone calls made on behalf of Defendant Encor to Plaintiff's personal cell phone (915) 252-9280 generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to an artificial or prerecorded voice message.

42. Both calls Plaintiff received from Defendant Encor started with the same artificial or prerecorded message that stated:

"Hi this is Brian Lee calling on behalf of the solarproject.com how are you today? Now actually the reason were calling today is because we've been giving out free solar installation quotes to home owners in your area just because more and more people are choosing to go solar which is really a smart choice with all those current tax incentives and government rebates out there plus its also a really just a great way to go green and start saving money on your monthly utility bill now my job is just to make sure you do meet those minimum requirements to get that free quote and I promise it'll take just a few minutes of your time okay."

43. Plaintiff was then transferred to a representative named Ryan that said he was with national solar project. Ryan gathered Plaintiffs personal information, credit score, and asked how much his current electric bill was monthly.

7

44. Ryan advised Plaintiff that the solar provider in his area was going to be with Encor Solar and the consultation would be online. Plaintiff agreed to the free consultation for the sole purposes of identifying the company responsible for the illegal robocalls.

45. Plaintiff received an email from jonie@encorsolar.com Joanne Blinman a sales manager from Encor that revealed the company responsible for the illegal robocalls.

46. Defendants purposefully availed themselves of the forum state by specifically targeting Texas residents by using Texas area codes to trick consumers into thinking the calls were local.

47. Table A displays the calls made by the Defendants

Table A:

| Date | Time | Caller ID |
|---|---|---|
| 12/21/2021 | 10:31AM | 830-283-3076 |
| 12/21/2021 | 11:56AM | 830-283-3076 |

48. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

49. The unauthorized phone calls made from or on behalf of Defendant Encor to Plaintiff's personal cell phone (915) 252-9280 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

50. Neither Defendants registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants registrations.

51. Neither Defendants qualify for an exemption under § 302.053.

52. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

53. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

54. Defendant Larkin participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

55. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

56. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

57. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## DEFENDANT LARKIN IS PERSONALLY LIABLE

58. Defendant Larkin refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Larkin financially.

59. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

60. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

61. Quoting Texas v. American Blastfax:

    The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

    To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant

Blastfax, Inc., for all TCPA damages in this lawsuit." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

62. The Same Court held that corporate officers were also personally liable for DTPA violations

    The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

63. At all times material to the Complaint, acting alone or in concert with others, Defendant Larkin has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Defendant Encor including the acts or practices set forth in this Complaint.

64. Defendant Larkin is the principal director and operator of Defendant Encor controls the day-to-day operations of Encor and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit solar panel systems on behalf of Encor.

65. Defendant Larkin approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

66. Defendant Larkin is not merely a bystander. His is the mastermind that scheme, planned, directed, initiated, and controlled the illegal and fraudulent behavior.

11

67. Defendant Larkin is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Larkin is the sole director of Encor and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Larkin has taken no steps to stop the behavior because the behavior benefits Larkin financially. Defendant Larkin breaks the law with his eyes and pocketbooks wide open.

68. Defendants should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

69. Defendant Larkin should be held liable because to do otherwise would simply allow him to dissolve Encor and set up a new corporation. This would result in both the TCPA and DTPA being unenforceable.

### The Texas Business and Commerce Code 305.053

70. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

71. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

72. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

73. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

74. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

75. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

76. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### The Plaintiff's cell phone is a residential number

77. The calls were to the Plaintiff's cellular phone (915) 252-9280 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name and pays the cell phone from his personal accounts.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

78. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

79. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

80. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

81. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## FIRST CAUSE OF ACTION

### Willful and/or Knowing Violation of 47 U.S.C. § 227
### Telephone Consumer Protection Act of 1991
### (Against all Defendants)

82. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

83. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

84. Plaintiff never consented to receive calls from Defendants. Plaintiff has no relationship with Defendants.

85. Defendants' calls were made for purposes of advertising and marketing Defendants solar panel systems. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

86. The calls were made using an artificial or prerecorded voice message to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

87. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful calling campaigns.

88. Not only did Defendants make these violating calls, Defendants and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

89. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## SECOND CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
(Against All Defendants)

90. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

91. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

15

a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

92. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

93. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

### THIRD CAUSE OF ACTION

### (Against All Defendants)

94. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

95. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

96. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

97. Plaintiff incorporates the foregoing allegations as if set forth herein.

98. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

99. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

100. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

## FIFTH CAUSE OF ACTION
### (Violations of The Texas Business and Commerce Code 302.101)

101. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

102. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

103. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

104.    Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.  **Texas Business and Commerce Code 302.302(d).**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for two calls.

E.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.    An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.    An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.    Such further relief as the Court deems necessary, just, and proper.

18

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

February 7, 2022					Respectfully Submitted,

						Erik Salaiz
						Plaintiff, Pro Se
						319 Valley Fair Way
						El Paso, Texas 79907
						915-252-9280
						Salaiz.ep@gmail.com